UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                                  CRIMINAL ACTION NO. 3:16-CR-128-CRS

William Dallas ELMORE                                                        DEFENDANT

# MEMORANDUM OPINION

## I.     Introduction

This matter is before the court on Defendant William Dallas Elmore's (1) *ex parte* request to represent himself (DN 56), the magistrate's report on that request (DN 61) ("*Pro Se* Report"), and objections filed thereto (DN 62) and (2) motion to suppress (DN 42), the magistrate's report on that motion (DN 47) ("Suppression Report"), and objections filed thereto (DN 54). For the following reasons, Elmore's request to represent himself and motion to suppress will be denied and the magistrate's reports will be accepted.

## II.    Factual Background and Procedural History

Elmore makes limited objections to the factual findings of the magistrate. Therefore, the Court adopts and repeats the factual findings of the magistrate in whole, noting Elmore's objections as it proceeds.

> On May 23, 2012, Elmore pled guilty to two counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Case No. 3:11-CR-54-JHM, DN 42).[1] The District Judge sentenced Elmore to 51 months in prison to be followed by 10 years of supervised release. (*Id.*, DN 66).

---

[1] Elmore argues that the magistrate's recitation of Elmore's criminal history is "irrelevant," "salacious," and "placed for the sole purpose of condemning Mr. Elmore and prejudicing this Court against Mr. Elmore." DN 54 at 1, n. 1. However, a defendant's criminal history "is relevant to the probable cause inquiry," particularly where, as here, the search was for evidence related to the same crime. *United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009). The probable cause inquiry "is not fettered by the presumption of innocence embodied in the test for conviction." *Id.* Rather, a "'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." *Id.*

1

Around February 2, 2016, Elmore violated the terms of his supervised release by using a computer to view Spanish videos of physicians performing exams on young naked girls and to view autopsy videos of young rape victims. (*Id.*, at DN 93). As a result of these violations, United States Probation Officers and law enforcement officials executed a search on Elmore's residence and recovered adult pornography magazines, unauthorized cell phones, an unauthorized external hard drive, and a duffel bag filled with approximately 30 pairs of little girls' underwear. (*Id.*). Elmore's Probation Officer also testified that he had received a call from the University of Louisville Police Department reporting that Elmore was using a school library computer to view child pornography. (*Id.*). The District Judge revoked Elmore's term of supervised release and imposed a sentence of six months custody to be followed by ten years of supervised release. (*Id.*, at DN 95).

While Elmore was serving the revocation sentence, law enforcement officials obtained and executed the three state search warrants at issue in Elmore's present motion to suppress. Detective Joseph Wilkins of the Louisville Metro Police Department, who has been a law enforcement officer for seventeen years, sought the first search warrant on June 21, 2016, in Jefferson County Circuit Court, seeking to remove a "2004 Green Ford Mustange [sic] covertabe [sic] two door KY Plate 805-VFK and VIN 1FAFP45X64FK238964[2] . . . registered to William Dallas Elmore" from 10019 Morgan Ave., Fairdale, KY 40118 to be towed to the Louisville Metro Police tow lot to be searched for a USB thumb drive. (DN 42-1, at p. 1). The application for search warrant included an affidavit setting forth the following probable cause for issuance of the warrant. Detective Joseph Wilkins indicated that he, along with Detective Shutte interviewed an inmate at the Marion Federal Prison in Marion, Illinois, after being told by Correctional Officer Mark Steinmetz that the inmate interviewed had information regarding Elmore's case. (*Id.* at p. 2). The inmate indicated he was housed with Elmore and that Elmore described to him how he has sexually abused a seven year old victim in Louisville, Kentucky, and described the family of the victim as told to him by Elmore. (*Id.*). All of the information matched Detective Wilkins's case against Elmore and matched the information provided by the victim. (*Id.*). The sexual abuse described by the inmate also matched information provided "by another inmate in Kentucky who also claims was disclosed to him by Elmore." (*Id.*). The inmate further stated that Elmore disclosed that he took naked photos of the victim and had them on a thumb drive, which he hid in a Ford Mustang in some type of LED lights on the vehicle. (*Id.*). Detective Wilkins noted that the inmate providing this information did not seek any special treatment or consideration. (*Id.*).

Acting on this information, Detective Wilkins located a Ford Mustang at 10019 Morgan Ave, Fairdale, Kentucky, 40118, ran the plates and found the vehicle was registered to William Dallas Elmore. (*Id.* at p. 3). Detective Wilkins also spoke with Detective Jeff Jewell of the University of Louisville Police, who investigated and charged Elmore in the case he is presently serving time for, and Detective Jewell advised that possession of child porn on a thumb drive is a known behavior

---

[2] The VIN number on the first affidavit originally read "1FAFP45X64K238964." It had a hand-written edit, adding the third "F." Elmore claims this is reversible error in the warrant. The Court disagrees. *See* IV B. i. f., *infra*.

2

of Elmore's. (*Id.*). On June 22, 2016, Detective Wilkins executed the first search warrant and seized "1 CD and 1 charger component". (*Id.* at p. 5).

On June 29, 2016, Detective Joseph Wilkins sought a second search warrant, this time for "the premises known and numbered as 8601 National Turnpike, Fairdale, KY 40118, Unit number 291" to locate any electronic devices that could be used to record, store, transport, play, produce, and/or disseminate child pornography. (DN 42-2, at pp. 1-2). The affidavit for the second search warrant is identical to that of the first search warrant but adds that the unnamed inmate housed with Elmore also stated that Elmore "told him that he has a phone that his parole officer did not know about that contains possible child porn" and that "his phone was in a storage unit." (*Id.* at p. 3).[3] Detective Wilkins's second affidavit also states that while executing the first search warrant and specifically while recovering Elmore's vehicle, he was able to confirm that Elmore had personal items in a storage unit located on National Turnpike. (*Id.* at p. 4). Detective Wilkins indicated that on June 21, 2016, he made contact with the employees at the "Storage Express" and confirmed that there was a unit 291 that was rented to Carolyn Elmore, Defendant Elmore's step-mother. (*Id.*). By June 23, 2016, Detective Wilkins had confirmed that Carolyn Elmore was renting the discussed storage unit to hold Defendant Elmore's belongings while he was in prison and Carolyn Elmore advised that she had the keys for the storage unit. (*Id.*). Five days later, Detective Wilkins executed the second search warrant and seized "1 Microsoft CD, 1 McAfee CD, 3 Dell CDs, 1 Roxio CD, 1 Thumb Drive, 1 Sim Card (AT&T)[.]" (*Id.* at p. 6).

Then, on August 19, 2016, Detective Joseph Wilkins sought a third search warrant from the Jefferson County Circuit Court. (DN 42-3). This third warrant was for the search of the following described personal property:

> Three Electronic keyless entry devices. The first is a Viper, model #7654V and is attached to a single Ford key that fits the above vehicle. The second is a Viper, model # 7941V and is attached to multiple key rings with one moven [sic] store key, multiple rewards cards, an elf key chain, and an the third keyless entry device. The third keyless entry device is made by Ford Motor Co. and is model # 1788104575.

(*Id.* at p. 2). The warrant sought to search the contents and/or inside of the above listed devices to locate any electronic devices that could be used to record, store, transport, play, produce, and/or disseminate child pornography. (*Id.*). Detective Wilkins's affidavit incorporated all of the information from the first two affidavits and included the following additional, new information. (*Id.* at pp. 3-4). On August 18, 2016, Detective Wilkins was contacted by Carolyn Elmore, Defendant Elmore's step-mother, and she advised that she picked up Elmore from prison and told him about the search warrants for his vehicle and storage unit. (*Id.* at p. 4).[4]

---

[3] The second affidavit contains the VIN number pre-alteration and features another hand-made edit on the date page. Elmore claims this is reversible error in the warrant. The Court disagrees. *See* IV B. i. f., *infra*.

[4] The statements of Ms. Elmore give rise to Elmore's requests for a *Franks* hearing, as he claims the information is false or made with reckless disregard for the truth. The Court finds that a *Franks* hearing is not warranted because Elmore has provided no evidence of falsity and because it would not prejudice the probable cause inquiry. *See* IV B. iii., *infra*.

Carolyn Elmore explained that Defendant Elmore's attitude changed when she told him about the car and that he became "overly concerned about the keyless entry devices and wanted to know if the police had all keyless entry devices." (*Id.*). She advised him that the police had all of the devices. (*Id.*). She was very concerned by Defendant Elmore's reaction and "checked to be sure she turned over all the devices." (*Id.*). After checking she realized there were "two other keyless entry devices that she removed from the one that was specifically for the above vehicle" and that only one was turned over to Detective Wilkins when he conducted the search warrant on the vehicle. (*Id.*). Carolyn Elmore advised that she wanted Detective Wilkins to come get the other two keyless entry devices "because of [Defendant] Elmore's behavior when they were discussing the keyless entry devices." (*Id.*). She stated she was concerned and thought Detective Wilkins should know about them and have them. (*Id.*).

On August 18, 2016, Detective Wilkins retrieved the two additional keyless entry devices from Carolyn Elmore at 11019 Morgan Ave., Louisville, Ky, 40118. (*Id.*). Detective Wilkins indicated that "[b]ased on his training and experience as a detective it is not uncommon for suspect's [sic] to hide SIM cards and SD cards in other electronic devices to prevent them from being discovered. As listed above, William Elmore also has a history of possessing child pornography and using electronic devices to store it." (*Id.*). Detective Wilkins executed the third search warrant on August 19, 2016, and recovered "1 Toshiba 26B Micro SD 0752R34254V – Black." (*Id.* at p. 7).

Based on the recovery of the Toshiba Micro SD card, as well as witness information, a federal grand jury sitting in the Western District of Kentucky returned a single-count Indictment charging Elmore with possession of child pornography in violation of 18 U.S.C. § 2256A(a)(5)(B) and 2252A(b)(2). (DN 1).

DN 47 at 1–5.

Elmore filed a motion to suppress on February 16, 2018. DN 42. The United States responded. DN 44. On March 28, 2018, this Court referred the motion to the magistrate. DN 46. The magistrate issued his Suppression Report on April 23, 2018. DN 47. Elmore filed his objections to that report on June 5, 2018. DN 54. Meanwhile, on August 20, 2018, Elmore filed a motion for an *ex parte* hearing as to the status of counsel, requesting to represent himself *pro se*. DN 56. On August 23, 2018, this Court referred the motion to the magistrate and ordered ruling on the objections to the Suppression Report held in abeyance pending a ruling on the defendant's request to proceed *pro se*. DN 57. The magistrate issued his *Pro Se* Report on September 18,

4

2018. DN 61 (sealed). Elmore, responding *pro se*, filed his objections to that report on October 1, 2018. DN 62 (sealed). His counsel did not file an objection for herself or Elmore.

**III.     Legal Standard**

The Court makes a *de novo* determination of the proposed findings or recommendations to which the parties have objected. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3). To the extent that no objection is filed, the arguments are waived. *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 147–48 (1985).

**IV.     Discussion**

**A.     Request to Proceed *Pro Se***

"[A] person accused of a felony has a constitutional right to be represented by counsel and to have counsel appointed for him if he cannot afford one, or, alternatively, to represent himself in such proceedings." *United States v. Mosley*, 810 F.2d 93, 97 (6th Cir. 1987). There is no constitutional right to a "hybrid representation" involving both. *Id.* Such hybrid representation may be granted, within the discretion of the district court, but is generally disfavored because it increases the risk of undue delay, jury confusion, and conflicts as to trial strategy. *Id.* at 97–98. When counsel has "performed in a highly competent and professional manner" and the defendant has been "given ample time to consult with his counsel over strategy," it is proper to prohibit hybrid representation. *Id.*

Here, Elmore has represented that he seeks to appear *pro se* only as to the motion to suppress. DN 62 at 1 (sealed). Even then, he would not represent himself if he were content that his counsel was making the arguments he asked her to make. *Id.* at 1–2 (sealed). In his own words, Elmore "does not believe he could adequately represent himself at trial." *Id.* at 3 (sealed). Ultimately, the magistrate found that the "dissatisfaction with counsel is not global" and that

5

"Counsel has not indicated an inability or unwillingness to continue representing Defendant."
DN 61 at 4 (sealed).

As to his motion to suppress, Elmore's counsel testified that Elmore wanted a lawyer who would be a "puppet" and indicated that she did not want to sign off on a motion or pleading containing arguments she believed unwarranted by the facts and law. *Id.* (sealed). It is clear that the client is given the ultimate authority to make decisions regarding the objectives of the representation, but the lawyer is permitted some control over the means by which those objectives are pursued. KY. SUP. CT. R. 3.130(1.2). Counsel did not wish to make claims she believed were frivolous, conduct proscribed by the rules governing her conduct. KY. SUP. CT. R. 3.130(3.1). Further, the arguments Elmore seeks to make regarding the motion to suppress (1) were adequately made by his counsel in the original motion to suppress, responded to by the United States, and ruled on by the magistrate and (2) are contained in the objections to the magistrate's Suppression Report. DNs 42, 44, 47, 54. Permitting him to proceed *pro se* on a "renewed" motion to suppress would cause undue delay, potentially aggravate rifts between Elmore and his counsel, and would likely be futile, given the completeness of counsel's motion to suppress.

Therefore, Elmore's request for hybrid representation is denied and the *Pro Se* Report of the magistrate is accepted in full.

**B.     Motion to Suppress**

Elmore requests *de novo* review of the magistrate's legal findings, specifically:

1. Whether the first two warrants were supported by probable cause thus no poisonous tree issue as to the third warrant that produced specifically one (1) Toshiba 2 GB micro SD (0752R34254V) black in color. The Magistrate Judge found the first and second warrants were legally sufficient to establish probable cause, thus no merit to the fruits of the poisonous tree argument.

2. Whether the third warrant established a nexus between statements made by Carolyn Elmore and Det. Wilkins' investigation.

3. Whether Det. Wilkins statements contained in the affidavits were "intentionally false or at the very least in reckless disregard to the truth."

Further, in Mr. Elmore's *Motion to Suppress* he put forth several arguments that were not addressed by of [sic] the Magistrate Judge, and requests *de novo* review of those issues.

The Court addresses each of the three numbered issues in turn and considers the allegedly omitted arguments as they arise within that framework.

### i. Fruit of the Poisonous Tree

The Fourth Amendment declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Evidence obtained in violation of this command is generally inadmissible in federal court. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). Further, evidence later obtained as a result of an initial unconstitutional search or seizure is generally inadmissible as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

To establish probable cause, there must be sufficient facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). These facts must arise within "the four corners of the affidavit." *Id.* This requires law enforcement to establish "a nexus between the place to be searched and the evidence sought." *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006). This inquiry is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life" and is deferential, focusing only on whether there was a substantial basis for the issuing judge to find probable cause. *Ill. v. Gates*,

462 U.S. 213, 231–39 (1983). The Court must be mindful that search warrant affidavits "must be tested and interpreted . . . in a commonsense and realistic fashion" because they are drafted "by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Elmore argues that the first and second warrants were not supported by probable cause and that the third warrant, since it was based on the first two, was the fruit of the poisonous tree. In attacking the first and second warrants, Elmore argues that (a) the officers improperly relied on an informant, (b) the information was stale or, at least, could be stale, (c) there were insufficient particularized facts, (d) there was no nexus between nudity and pornography, (e) the officer's experience was not properly examined, and (f) there were typographical errors. The Court addresses each in turn.

### a. The Informant

Elmore argues that the affidavit did not provide any information to support the veracity or basis of knowledge of the informant. DN 54 at 4–5. Further, Elmore claims the issuing judge did not properly consider that the lack of evidence seized from the first two warrants indicated a lack of the informant's credibility. *Id.* at 2, n. 3.

When a warrant is based on an informant's tip, the Court, in determining the existence of probable cause, must examine the veracity and basis of knowledge of the informant as part of the totality of the circumstances. *Gates*, 462 U.S. at 230. "The statements of an informant . . . whose identity was known to the police and who would be subject to prosecution for making a false report, are . . . entitled to far greater weight than those of an anonymous source." *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005). Corroboration by a police investigation militates

heavily toward a finding of probable cause. *Id.* at 824. (citing *United States v. Williams*, 224 F.3d 520, 533 (6th Cir. 2000)).

Here, the informant's identity was known because Detective Wilkins interviewed the informant in person. DN 42-1 at 2. The informant was housed in the same dorm as Elmore and spoke with him, providing him an adequate basis of knowledge. *Id.* He gave Detective Wilkins detailed information regarding potential hidden child pornography, including a specific make and model of car. *Id.* He was also able to corroborate information from the investigation, including details about the age and location of the victim, the family of the victim, and statements made by the victim. *Id.* A second inmate in Kentucky further corroborated the informant's information. *Id.* After speaking with the informant, the officer undertook his own independent investigation where he looked at Elmore's addresses, discovered the car the informant had described at one of those addresses, found the license plate and VIN indicated it was registered to Elmore, and spoke with Detective Jewell, who had investigated and charged Elmore in the first case. *Id.* at 3. The second warrant affidavit repeated much of the same information, adding that the informant was aware that Elmore had a phone that contained possible child pornography and that he believed it was in a storage unit. DN 42-2 at 3. Afterward, the officer investigated and confirmed that Elmore indeed had personal items in a storage unit and that his stepmother had the keys for it. *Id.* at 4.

Such specific information, corroborated by other witnesses and the officer's own investigation, is sufficient to indicate the reliability and veracity of the informant. While Elmore is correct that an informant whose prior tips proved reliable can be considered more reliable for the instant tip, failure to produce evidence from prior tips is not dispositive, particularly where, as here, there is independent corroboration of multiple kinds. *See United States v. Wagner*, 989

F.2d 69, 73 (2d Cir. 1993) ("While information provided by an informant from whom the government has received consistently reliable information in the past is likely to be sufficiently reliable to establish probable cause, *Gates* instructs that it is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy.") (citing *Gates*, 462 U.S. at 237–38 (holding that a tip from an anonymous informant can be a basis for a finding of probable cause)). Therefore, this argument is without merit.

### b. Staleness

An argument raised by Elmore, but not addressed by the magistrate, is that the affidavit is infirm because it fails to reveal any dates as to when the jailhouse informant obtained information, when the investigation began, or when the crime allegedly occurred. DN 54 at 5. For that proposition, Elmore cites *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011). In *Doyle*, there was no indication as to when the crimes occurred or when probable cause arose. *Id.* at 474. The issue was "not that too much time elapsed, but instead that there was insufficient evidence presented to the magistrate to determine how much time elapsed." *Id.* at 475. The Sixth Circuit has applied a similar test. *See United States v. Hython*, 443 F.3d 480 (6th Cir. 2006). In *Hython*, the affidavit lacked information as to when a controlled drug buy occurred. *Id.* at 486. The court noted that "[b]ecause probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence." *Id.* Probable cause may be found, the court concluded, when there is "a date or even a reference to 'recent activity.'" *Id.*

Here, unlike the affidavits in *Doyle* and *Hython*, there are sufficient indicia of recentness. The affidavits indicate several dates overlooked by Elmore. Specifically, that the interview with the informant occurred on June 15, 2016, the computer search occurred on June 16, 2016, the Ford Mustang was located on June 17, 2016, and Detective Wilkins spoke with Detective Jewell

10

on June 20, 2016. DN 42-1 at 2–3. With that information, the warrant application and affidavit were submitted to the judge on June 21, 2016, the warrant issued later that day, and the warrant was executed on June 22, 2016. *Id.* at 5. The second affidavit added information obtained on June 21, 2016 and June 23, 2016 regarding discovery of the storage unit and discussion with Ms. Elmore. DN 42-2 at 4. With that additional information, the warrant application and affidavit were submitted to the judge on June 27, 2016, the warrant issued later that day, and the warrant was executed on June 28, 2016. *Id.* The investigation took place over the span of only a month. As such, nothing in the record prevents the Court from determining when probable cause arose and nothing indicates that the probable cause that arose had become stale. Therefore, this argument is without merit.

        **c.**        **Particularized Facts**

Throughout his motion to suppress and objections to the Suppression Report, Elmore asserts that the affidavit is bare bones and does not plead particularized facts.

A bare bones affidavit "states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). In other words, it is a "conclusory affidavit . . . that asserts 'only the affiant's belief that probable cause existed.'" *Id.* (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). "It provides nothing more than a mere 'guess that contraband or evidence of a crime would be found,' either 'completely devoid' of facts to support the affiant's judgment that probable cause exists, or 'so vague as to be conclusory or meaningless.'" *Id.* (internal citations omitted).

11

The prototypical examples of bare bones affidavits come from *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964). In *Nathanson*, the affidavit merely concluded that the officer "has cause to suspect and does believe that" liquor illegally brought into the United States "is now deposited and contained within the premises" belonging to the defendant. 290 U.S. at 44. In *Aguilar*, the affiants stated that they "received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." 378 U.S. at 109.

In contrast, the affidavits here provided detailed and specific information obtained from an informant, which was corroborated by another inmate and an independent police investigation. The affidavit has particularized facts and does not merely state, in a conclusory way, that probable cause existed. Therefore, this argument is without merit.

### d. Nexus

Elmore alleges that the first and second affidavits lacked a sufficient nexus because the informant spoke of "naked images," rather than "child pornography." DN 54 at 6–7.

"Child pornography" is defined by statute as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8). It is clear that "'mere nudity' is protected by the First Amendment—even where child pornography is involved." *Mikesell v. Conley*, 51 F. App'x 496, 502 (6th Cir. 2002). Such constitutional limitations prohibit convictions for "innocuous photographs of naked

12

children" while criminalizing "exploitation of children," such as "lewd exhibitions or a graphic focus on the child's genitals." *Id.* at 503. As referenced earlier, in the probable cause inquiry, it is permissible to consider the defendant's criminal history. *Dyer*, 580 F.3d at 392.

Here, the informant reported that Elmore described the sexual abuse of a seven-year-old victim and that he "took naked images of the victim and had them on a thumb drive." DN 42-1 at 2. The affidavit also informed the issuing judge that Elmore has a known history of possessing child pornography on thumb drives. *Id.* at 3. The second affidavit added that there could be "possible child porn" on a cell phone. DN 42-2 at 3. From the informant's information and Elmore's history of involvement with child pornography, there is a clear nexus between reports of "naked images of the victim," "possible child porn," and the possession of child pornography. Therefore, this argument is without merit.

    **e. Experience**

Elmore alleges that the "affidavit failed to provide any experience or expertise on the part of Detective Wilkins in the realm of investigation and/or prosecution of child pornography to assist in the establishment of probable cause." DN 54 at 7. For that proposition, Elmore relies on *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008). However, the issue in *Hodson* was whether there is an empirical link between sexual deviance or attraction and possession of child pornography. *Id.* at 291. That link "depends on the expertise" of the officer filing the affidavit. *Id.* As a result, the officer "established probable cause to search for evidence of one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." *Id.* at 289. This case lacks that issue. Detective Wilkins has 17 years of experience with the Louisville Metro Police Department (DN 42-1 at 2) and, unlike the officer in *Hodson*, did not establish probable cause for one crime and request a warrant for an entirely

different crime. The evidence indicated that Elmore possessed child pornography and Wilkins sought a warrant to search for child pornography. Therefore, this argument is without merit.

### f. Typographical Errors

Elmore points to two typographical errors on the first two affidavits. On the first, there was a hand-altered correction to the vehicle's VIN number. DN 54 at 7. On the second, there was a hand-altered date. DN 54 at 10. The Court must remain mindful that affidavits "must be tested and interpreted . . . in a commonsense and realistic fashion" since they are "drafted by nonlawyers in the midst and haste of a criminal investigation." *Ventresca*, 380 U.S. at 108. Typographical errors are generally insufficient to destroy probable cause. *United States v. Sawyers*, 127 F. App'x 174, 181 (6th Cir. 2005) (citing *United States v. Plunk*, 456 F.2d 1027, 1028 (6th Cir. 1972)). Therefore, this argument is without merit.

With all objections disposed of, it is clear that the first and second warrants were based on probable cause. As a result, there is no poisonous tree from which the third could grow.

### ii. Probable Cause and Nexus in Third Warrant

As to the third warrant, Elmore repeats his claims that the warrant is bare bones and lacked sufficient facts. For the same reasons described above, the Court finds those arguments without merit. Elmore then argues that the affidavit "failed to establish a nexus between the alleged statements from Ms. Elmore and an ongoing investigation" and that "it failed to provide the issuing magistrate any information that would support Ms. Elmore's credibility." DN 54 at 11.

Carolyn Elmore, the informant named in the third affidavit, is Defendant's step-mother. DN 42-3 at 4. After Defendant was released from prison, Ms. Elmore picked him up. *Id.* On the drive home, she informed him of the searches that had occurred. *Id.* He was particularly

14

concerned about a number of his keyless entry devices. *Id.* Ms. Elmore had already turned one over to the police but, alarmed by Elmore's reaction, sought and found two additional keyless entry devices, which she turned over to police. *Id.* Detective Wilkins also included that, based on his training and experience, "it is not uncommon for suspect's [sic] to hide SIM cards and SD cards in other electronic devices to prevent them from being discovered." *Id.* He repeated that Elmore had a "history of possessing child pornography and using electronic devices to store it." *Id.*

The magistrate relied on *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986), where the court found that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." Elmore correctly notes that this case is not identical to *Pelham*. The affidavits in this case do not indicate that Ms. Elmore saw any explicit and clear evidence of child pornography. She saw only keyless entry devices, which happened to contain a smaller device which contained the child pornography. However, that does not preclude a finding of probable cause. *United States v. Lee*, 48 F. App'x 184, 187 (6th Cir. 2002) (finding *Pelham* inapplicable because the informant did not see the criminal conduct, but finding probable cause regardless on the merits).

Under the totality of the circumstances, Ms. Elmore is sufficiently credible and her information has a sufficient nexus to the ongoing investigation. She was willing to be named in the affidavit and she provided first-hand observations and knowledge that would lead a reasonable person, started by an intense reaction, to investigate the keyless entry devices. Her credibility is further bolstered when coupled with Elmore's criminal history, the known habit of individuals using small electronic devices to hid SIM cards or SD cards, the information already

15

provided by the other informants, and the corroborating investigation of Wilkins. As a result, there is sufficient probable cause to justify the issuance of the third warrant.

### iii. *Franks*

Finally, Elmore argues that there are false or misleading statements attributed to Carolyn Elmore in the third affidavit that warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). DN 54 at 11. Specifically, he claims that she never picked him up from prison and that she did not tell him about the search warrant issued for the Ford Mustang. DN 42 at 6.

"A defendant is entitled to a Franks hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015). This is a "heavy burden" which requires "an offer of proof" with "supporting affidavits or [an] expla[nation] of their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

Elmore meets neither prong. First, he has not produced any evidence that the statements attributed to Ms. Elmore are intentionally false or made with reckless disregard for the truth. Second, the statements were not necessary for a probable cause determination. Removing those statements, it is still clear that Ms. Elmore spoke to the Defendant, who expressed concern about keyless entry devices after learning of a search of his car. That information, along with the other informant's information and the corroborating investigation, is sufficient to find probable cause to search the keyless entry devices. Therefore, the request for a *Franks* hearing is denied.

## V. Conclusion

Elmore is not entitled to hybrid representation. His attorney has effectively presented his suppression arguments to the Court, which have been addressed on the merits. Otherwise, both Elmore and his counsel have indicated they are able to continue in the lawyer-client relationship. Therefore, the Court, for the reasons stated, will deny Elmore's request to represent himself (DN 56), accept and adopt the *Pro Se* Report of the magistrate in its entirety (DN 61) (sealed), and overrule Elmore's objections to that report (DN 62).

Elmore has been unable to point to deficiencies in any of the three warrants. Therefore, the Court, for the reasons stated, will deny Elmore's motion to suppress (DN 42), accept and adopt the Suppression Report of the magistrate as supplemented by this memorandum opinion (DN 47), and overrule Elmore's objections to that report (DN 54).

A separate order will be entered in accordance with this opinion.

October 29, 2018

Charles R. Simpson III, Senior Judge
United States District Court