UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA							PLAINTIFF

vs.										CRIMINAL ACTION NO. 3:16-CR-128-CRS

WILLIAM DALLAS ELMORE								DEFENDANT

MEMORANDUM OPINION

I. Introduction

This matter is before the court on Defendant William Dallas Elmore's ("Elmore") motion to suppress, (DN 85), the report and recommendation of Magistrate Judge Lanny King on that motion (the "Report"), (DN 106), and objections filed thereto (DN 110). Elmore objects to the magistrate judge's decision not to suppress the SD card found in a keyless entry device. First, Elmore argues that the third search warrant was not sufficiently attenuated from the first two, allegedly, unconstitutional searches and is therefore fruit of the poisonous tree. Second, Elmore argues that the third search warrant was not supported by probable cause. Third, Elmore argues that the affidavit in support of the third search warrant was false and false by omission and he is therefore entitled to a *Franks* hearing. Fourth, in his motion to suppress, Elmore argues that the Louisville Metro Police's ("LMP") continued possession of his Ford Mustang ("Mustang") constitutes an illegal seizure and the third search warrant was the fruit of that illegal seizure.

In response to Elmore's first argument, the magistrate judge found that the attenuation doctrine exception to the exclusionary rule applied to the third search. Second, the magistrate judge concluded that the third affidavit was supported by probable cause. Third, the magistrate judge concluded that Elmore was not entitled to a *Franks* hearing. Fourth, the magistrate judge did not

reach the question of whether the LMP's possession of Elmore's mustang constituted an illegal seizure.

As to the first argument, the Court disagrees with the magistrate judge's conclusion that the attenuation doctrine applies to the third search warrant. But, on the merits, the Court agrees that the SD card should not be suppressed since the third search warrant was not the product of any illegal government activity. As for the second argument, the Court finds that the third search warrant was supported by probable cause. As to the third argument, the Court finds that Elmore is not entitled to a *Franks* hearing. As to the fourth argument, the Court finds that the LMP's continued possession of Elmore's Mustang did not constitute an illegal seizure under the Fourth Amendment. Therefore, the Court will accept and adopt the Report as supplemented by this opinion and overrule Elmore's objections. As a result, the Court will deny the motion to suppress.

## II. Factual Background and Procedural History

Elmore filed a motion to suppress on February 16, 2018. DN 42. On March 28, 2018, this Court referred the motion to Magistrate Judge Dave Whalin. DN 46. The magistrate judge issued his report and recommendation on April 23, 2018. DN 47. On October 30, 2018, this Court accepted the report and recommendation of the magistrate judge and issued a Memorandum Opinion denying Elmore's motion to suppress. DN 66. On November 21, 2018, Elmore's counsel filed a motion to withdraw from her representation of Elmore, DN 72, which was granted on December 17, 2018. DN 78. On December 20, 2018, Elmore's current counsel was appointed. DN 79.

On May 17, 2019, Elmore filed a second motion to suppress. DN 85. On August 7, 2019, this Court referred the motion to suppress to Magistrate Judge Lanny King. DN 102. The

magistrate judge issued his report and recommendation on August 27, 2019. DN 106. On October 4, 2019, Elmore filed objections to the magistrate's Report and Recommendations. DN 110.

Elmore makes limited objections to the factual findings of the magistrate judge's Report. DN 110 at 2–3. Therefore, the Court adopts and repeats the factual findings of the magistrate judge in whole, noting Elmore's objections as it proceeds.

> The Jefferson Circuit Court issued three search warrants. (Copies of warrants and supporting affidavits at Dockets # 42-1, 42-2, 42-3.[1]) The warrants authorized the affiant, Detective Joseph Wilkins, to search Defendant's Ford Mustang, his storage unit, and three keyless entry devices (key fobs). At the time of execution of the warrants, Defendant was in custody[2], and Detective Wilkins interacted with Mrs. Elmore for purposes of execution of the warrants. Mrs. Elmore gave Detective Wilkins (on three separate occasions) the key fob to the Mustang, the key to the storage unit, and two additional key fobs. The first and second searches did not result in discovery of any incriminating evidence. The third search resulted in discovery of incriminating images on a Toshiba 2GB Micro SD Card, found inside one of three key fobs. (Docket # 42-3 at PageID # 95.)
> Detective Wilkins executed the first search warrant on June 22, 2016, and the second one on June 28, 2016. Sometime between June 28, 2016 and August 18, 2016, Mrs. Elmore contacted Detective Wilkins to discuss certain suspicions she had regarding the key fob to the Mustang. On May 20, 2019, Defendant filed a DVD copy of this phone conversation between Mrs. Elmore and Detective Wilkins.
> In the conversation, Mrs. Elmore reminded Detective Wilkins that Defendant was scheduled to be released from custody soon and that Defendant would be reclaiming his Mustang.[3] Mrs. Elmore indicated that she had her suspicions about the key fob to the Mustang and suggested that Detective Wilkins might want to search inside to see if it contained child pornography while Detective Wilkins still had a "hold" on it (9:12).[4] Mrs. Elmore repeated several times that it had been "laying" on her conscience (1:40, 1:58, 2:11, 6:47) and that she had been "praying that it's not anything" (2:14, 2:40, 3:53). "It was a concern of mine, and I

---

[1] The three exhibits appended to Docket # 42 contain all relevant information for each search (in chronological order), including warrant, supporting affidavit, and return. Defendant attaches the same information to his motion to suppress but in a dispersed and less convenient form. Specifically, the warrant and affidavit for the first search is at Docket # 85-5, and the return is at Docket # 85-7. The warrant and affidavit for the second search is at Docket return is at Docket # 85-9. The warrant and affidavit for the third search is at Docket # 85-10, and the return is at Docket # 85-12.
[2] Elmore correctly objects to the timing of the third search warrant. DN 110 at 2. Detective Wilkins executed the third search warrant after Elmore was no longer in custody.
[3] Elmore correctly objects to the timing of this conversation. At this time, Elmore had been released from custody and had previously contacted Detective Wilkins about reclaiming his Mustang.
[4] Elmore correctly objects to the magistrate judge's characterization of Ms. Elmore's conversation with Detective Wilkins. The recording indicates that she did not use the phrase "might want to search."

just wanted you to be aware before he gets … the car back, to maybe at least check it [i.e., the key fob] and see" (5:47-57). Mrs. Elmore explained that, while she cared for Defendant, her primary concern was that other little girls not be put in "harm's way" (4:36). "I felt like, if I didn't say anything and if there was something, then that … makes me just as guilty" as Defendant might be (7:41-52).

On August 18, 2016, a subsequent conversation occurred between Mrs. Elmore and Detective Wilkins in which Mrs. Elmore reported that she had located two additional key fobs and that she wanted Detective Wilkins to retrieve them. According to the affidavit in support of the third search warrant:

> On August 18, 2016 I was contacted by Carolyn Elmore and she advised me that she picked up Williams (sic) Elmore from prison and told him about the search warrant on his vehicle as well as the search warrant on the storage unit. She advised me that when she told him about the car his attitude changed and he became overly concerned about the keyless entry devices and wanted to know if the police had all keyless entry devices. She advised him that the police did have all the devices. She stated his reaction was very concerning to her and she checked to be sure she turned over all the devices. She stated she then realized there were two other keyless entry devices that she removed from the one that was specifically for the above vehicle and the only one that was turned over to me when I conducted the search warrant for the vehicle. She advised me she wanted me to come and get the other two keyless entry devices because of William Elmore's behavior when they were discussing the keyless entry devices. She stated she was concerned and thought I should know about them and have them. … On August 18, 2016 I retrieved the two additional keyless entry devices from Carolyn Elmore.

(Docket # 42-3 at PageID # 92.) The third search warrant on three key fobs was executed on August 19, 2016. (*Id.* at PageID # 95.) It resulted in discovery of incriminating images on a Toshiba 2GB Micro SD Card, located inside one of the three key fobs.

### III.     Legal Standard

The Court makes a *de novo* determination of the proposed findings or recommendations of the magistrate judge to which the parties have objected 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). To the extent that no objection is filed, the arguments are waived. *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), aff'd, 474 U.S. 140, 147–48 (1985).

### IV.     Discussion

The Fourth Amendment declares that "[t]he right of the people to be secure in their

4

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Evidence obtained in violation of this command is generally inadmissible in federal court. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). Further, evidence later obtained as a result of an initial unconstitutional search or seizure is generally inadmissible as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

To establish probable cause, there must be sufficient facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). These facts must arise within "the four corners of the affidavit." *Id*. This requires law enforcement to establish "a nexus between the place to be searched and the evidence sought." *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006). This inquiry is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life" and is deferential, focusing only on whether there was a substantial basis for the issuing judge to find probable cause. *Ill. v. Gates*, 462 U.S. 213, 231–39 (1983). The Court must be mindful that search warrant affidavits "must be tested and interpreted . . . in a commonsense and realistic fashion" because they are drafted "by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Further, "[a] defendant is entitled to a Franks hearing if he: (1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and (2) proves that the false statement or material omission is necessary to the probable cause finding in the

affidavit." *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015). This is a "heavy burden" which requires "an offer of proof" with "supporting affidavits or [an] expla[nation] of their absence." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The Sixth Circuit has interpreted the Franks standard to require a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989).

Elmore raises four arguments in favor of suppressing the SD card: (1) the third search warrant was the fruit of the poisonous tree, (2) the third affidavit lacked probable cause, (3) the third affidavit is false and false by omission, and (4) LMP's continued possession of Elmore's mustang was an illegal seizure and the third search warrant is the fruit of that illegal seizure. The Court will address each argument.

### A. Fruit of the Poisonous Tree

Elmore argues that the first and second search warrants were not supported by probable cause and that the third warrant, since it was based on the first two, was the fruit of the poisonous tree. DN 85-1 at 21–22. "The animating purpose underlying the exclusionary rule is the deterrence of unlawful government behavior." *United States v. Gross*, 662 F.3d 393, 401 (6th Cir. 2011)(citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)). The Supreme Court has held that the exclusionary rule reaches evidence "found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804 (1984)(quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). The "indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *New York v. Harris*, 495 U.S. 14, 18 (1990). But, the Court has consistently held that the exclusionary rule does not reach evidence when the "connection between the illegal police conduct and the discovery

and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Segura*, 468 U.S. at 805. The Court has also consistently held that the illegal police conduct must be more than a "but for" cause of the discovery and seizure of evidence. *Wong Sun v. United States*, 371 U.S. 471, 487–488 (1963); *Segura*, 468 U.S. at 815; *Harris*, 495 U.S. at 17.

Further, the Court has held that the attenuation analysis is "only appropriate when, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Harris*, 495 U.S. at 18. In *Crews*, the Court did not suppress a victim's in-court identification despite the defendant's illegal arrest because the evidence was not "come at by exploitation of…the defendant's Fourth Amendment rights." *United States v. Crews*, 445 U.S. 463, 471 (1980). Similarly, in *Harris*, the Court did not suppress a defendant's statement made prior to an illegal entry and arrest in the defendant's home. *Harris*, 495 U.S. at 20. The Court held that the defendant's statement "was not an exploitation of the illegal entry into [the defendant's] home" and therefore suppressing the statement would have "little effect on the officers' actions, one way or another." *Id.* at 19–20.

This Court also finds *Segura* instructive. In *Segura*, the Supreme Court considered "whether, because of an earlier illegal entry, the Fourth Amendment requires suppression of evidence seized later from a private residence pursuant to a valid search warrant which was issued on information obtained by the police before the entry into the residence." *Segura*, 468 U.S. at 797–798. The Court held that the exclusionary rule did not require that the evidence be suppressed. *Id*. at 815. While the first entry into the defendant's apartment was illegal, the Court held that it "did not contribute in any way to the discovery of the evidence seized under the warrant." *Id*. "None of the information on which the warrant was secured was derived from or related in any way to the initial entry into the petitioner's apartment." *Id*. at 814. Therefore, the Court reasoned

that the evidence was not the product of illegal government activity and did not justify the suppression of the evidence. *Id*. at 815. The Court also rejected the argument that "but for" the illegal entry the defendants would have "arranged for the removal or destruction of the evidence" at issue. *Id*. at 815–816. The Court stated that this was pure speculation and declined to extend the exclusionary rule to further protect criminal activity. *Id.*

Assuming *arguendo* that the first two searches were infirm, the execution of the first and second search warrants produced *no evidence* against Elmore. Detective Wilkins did not include *any* information produced by the first or second search in the third affidavit because *nothing* came of those searches. The third affidavit contained the information used previously to secure the first two search warrants and Ms. Elmore's new suspicions regarding Elmore and the keyless entry devices. DN 85-10. Ms. Elmore came forward to tell Detective Wilkins about her suspicions without any prompting from Detective Wilkins. This information was not the product of Detective Wilkins' exploitation of the prior searches or related in any way to the results of the first two searches. Rather, it was the product of Ms. Elmore's decision to inform Detective Wilkins of her suspicions. The third search warrant was not the product of illegal government activity and is therefore not the fruit of the poisonous tree.

Elmore argues that this Court must focus on his reaction to the news that his Mustang and storage unit had been searched. *See* DN 110 at 7–11. In short, Elmore contends that he never would have reacted to the news of the searches if they never occurred and Ms. Elmore would never have reported his reaction to Detective Wilkins. *Id.* This is a quintessential "but for" causation argument the Supreme Court has consistently rejected as grounds to apply the exclusionary rule. Detective Wilkins sought the third search warrant because Ms. Elmore independently contacted him about her suspicions. Even if this Court were to accept Elmore's attenuated causal chain, applying the

8

exclusionary rule here would not change any police actions; it would be inapposite to the exclusionary rule's animating purpose. Therefore, Elmore's argument is without merit.

B. **Probable Cause**

Elmore argues that the information included in the third affidavit is insufficient to establish a finding of probable cause. DN 85-1 at 22. First, Elmore claims that the third affidavit contains no evidence that the keyless entry devices were "connected with criminal activity." *Id.* Elmore argues that no information provided by either the inmate or Ms. Elmore mentioned an SD card, and therefore has no indication that there would be evidence of child pornography in the keyless entry devices. *Id.* Second, Elmore claims the third affidavit does not establish a likelihood that any contraband would be found in any of the keyless entry devices. *Id.* at 23. Elmore argues that the affidavit does not provide evidence of the likelihood child pornography would be found in each of the keyless entry devices and therefore is not sufficiently particularized to each keyless entry device. *Id.* Finally, Elmore argues that the third affidavit's reliance on Detective Wilkins' "training and experience" alone is insufficient to establish probable cause. DN 85-1 at 24.

The Court previously ruled that the third affidavit contained sufficient evidence to find probable cause. *See* DN 66 at 14–16. Elmore has not presented any evidence or arguments that would cause this Court to reconsider its prior ruling. This Court previously relied on *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) in making its determination for the third affidavit. *Pelham* holds that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *Id.* While it is true that Ms. Elmore did not provide explicit evidence of an SD card, or the likelihood an SD card would be inside each

9

keyless entry device, this does not preclude a finding of probable cause. *See* DN 66 at 15. In analyzing the third affidavit under this standard, this Court stated the following:

> Under the totality of the circumstances, Ms. Elmore is sufficiently credible and her information has a sufficient nexus to the ongoing investigation. She was willing to be named in the affidavit and she provided first-hand observations and knowledge that would lead a reasonable person, started by an intense reaction, to investigate the keyless entry devices. Her credibility is further bolstered when coupled with Elmore's criminal history, the known habit of individuals using small electronic devices to hide SIM cards or SD cards, the information already provided by the other informants, and the corroborating investigation of Wilkins. As a result, there is sufficient probable cause to justify the issuance of the third warrant.

*Id.* at 15–16. The third affidavit contained a substantial basis for conducting the search of the keyless entry devices. Therefore, Elmore's argument is without merit.

### C. *Franks*

Elmore argues that the third affidavit is false and false by omission and he is therefore entitled to a *Franks* hearing. Elmore contends that Ms. Elmore never said he became "overly concerned" about the keyless entry devices and that phrase in the third affidavit is false. Again, while it is true that Ms. Elmore did not utter the exact phrase used in the affidavit, that does not mean the information Detective Wilkins provided was false. Indeed, Detective Wilkins' characterization of Ms. Elmore's conversation with Elmore is clearly not deliberately or recklessly false. In the call with Detective Wilkins, Ms. Elmore said that Elmore got quiet when she told him the police searched his car. DN 85-1 at 24. Ms. Elmore then told Elmore that she gave the police his keys. *Id*. Elmore then asked Ms. Elmore whether she gave the police the keys and whether she gave them all of the keys. *Id.* He then asked whether she gave the keyless entry devices along with the keys. *Id*. Ms. Elmore told Detective Wilkins that the keyless entry devices "[were] very important to [Elmore]." *Id*. Overall, it is clear that Elmore did in fact become "overly concerned"

about the keyless entry devices. That phrase is an accurate summation of what Ms. Elmore relayed to Detective Wilkins. Therefore, Elmore's argument is without merit.

Elmore also argues that the "failure to include Ms. Elmore's repeated expressions of self-doubt was a *Franks* omission." DN 110 at 22. He provides the Court with no evidence that Detective Wilkins knowingly and intentionally, or with reckless disregard for the truth, omitted Ms. Elmore's expressions of "self-doubt." Further, this information is not material to the probable cause analysis. As the magistrate judge aptly stated, "probable cause does not require certainty." DN 106 at 19. And, as stated above, Ms. Elmore was sufficiently credible and her information had a sufficient nexus to the ongoing investigation regardless of her "self-doubt". Therefore, Elmore's argument is without merit.

Accordingly, because there are no deliberately or recklessly false portions or material omissions in the affidavit, Elmore's request for a *Franks* hearing will be denied.

### D. LMP's Possession of Elmore's Mustang

Elmore argues that the LMP's continued possession of his Mustang constitutes an illegal seizure and ultimately led to the information contained in the third affidavit. DN 85-1 at 14. Therefore, Elmore contends that the third search warrant was the fruit of the illegal seizure of his Mustang. *Id.* at 16. This argument is also without merit.

On June 22, 2016, the LMP took possession of the Mustang and executed the first search warrant. *Id.* at 14. They retained possession of the Mustang after the search. *Id.* Elmore argues that this constituted an illegal seizure. *Id.* To support his argument, Elmore relies on *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017). *Id.* at 15. Elmore argues that *Manuel* "resolved the circuit split over whether the continued possession of a seized item without probable cause constitutes a violation

of the Fourth Amendment." *Id*. According to Elmore, *Manuel* held that the continued possession of an item seized without probable cause violates the Fourth Amendment. *Id.* Therefore, the LMP's continued possession of Elmore's Mustang constituted an illegal seizure. *Id.* at 16.

Elmore then contends that the holding in *Manuel* supersedes the holding of *Fox v. Van Oosterum,* 176 F.3d 342, 351 (6th Cir. 1999).[5] In *Fox*, the Sixth Circuit held that "an initial, lawful seizure of a piece of property followed by a refusal to return that property" did not constitute a seizure under the Fourth Amendment. *Fox*, 176 F.3d at 351. Elmore argues that the Supreme Court in *Manuel* adopted the reasoning of the *Fox* dissent, thereby overturning *Fox*. DN 85-1 at 16

Elmore's argument is attenuated at best and a deliberate misrepresentation of law at worst. The majority opinion in *Manuel* clearly states that its holding is "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel*, 137 S. Ct. at 920. At no point does the majority address the continued possession of *property* after a *lawful* search and seizure. *Manuel* stands for the limited proposition that unlawful pretrial detention of persons is governed by the Fourth Amendment. *Manuel* does nothing to alter the binding precedential authority of *Fox*.

*Fox* controls here. The LMP executed a lawful search seizure of Elmore's Mustang. *See* DN 66. The LMP retained possession of the Mustang after the search. *Id.* Elmore then asked Detective Wilkins to return the Mustang after his release from prison. *Id*. As the holding in *Fox*

---

[5] Elmore also argues that *Kanuszewski v. Michigan HHS*, 927 F.3d 396, 424 (6th Cir. 2019) supports his claim that the continued possession of property after a lawful seizure constitutes a seizure under the Fourth Amendment. *See* DN 105; DN 110 at 9. This argument is also without merit. The court in *Kanuszewski* held that "the duration of a seizure affects its constitutionality" and therefore it is "necessary to consider whether the duration is 'reasonably needed to effectuate those purposes [justifying the seizure].'" *Kanuszewski*, 927 F.3d at 424–425. This analysis applies to seizures based on reasonable suspicion, like *Terry* stops, rather than a seizure based on the higher probable cause standard. Here, the LMP seized Elmore's mustang based on a lawful search warrant supported by probable cause. Therefore, *Kanuszewski* is inapposite to Elmore's argument.

dictates, the LMP's continued possession of the Mustang after a lawful search and seizure is not a seizure under the Fourth Amendment. Therefore, Elmore's argument is without merit.

## V. Conclusion

For the reasons stated herein, the Court will deny Elmore's second motion to suppress (DN 85). A separate order will be entered in accordance with this opinion.

December 3, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**